**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**WESTERN DIVISION**

**BRAD FURR**                                                                                    **PLAINTIFF**

**v.**                                                              **CIVIL ACTION NO.:** 5:25-cv-139-DCB-BWR

**PIKE CONSTRUCTION OF MISSISSIPPI, INC.**                              **DEFENDANT**

**COMPLAINT**
**JURY TRIAL DEMANDED**

**COMES NOW** Plaintiff, Brad Furr, by and through counsel, The Watson Law Firm, PLLC, brings this action to recover damages for violations of his rights pursuant to the Age Discrimination in Employment Act of 1967 (ADEA) for age discrimination, and violations of his rights pursuant to the Age Discrimination in Employment Act of 1967 (ADEA) for retaliation, against the Defendant, Pike Construction of Mississippi, Inc. In support of this cause, the Plaintiff would show unto the Court the following facts to-wit:

**THE PARTIES**

1.      Plaintiff, Brad Furr, is a male resident of Lincoln County, Mississippi.

2.      Defendant, Pike Construction of Mississippi, Inc., may be served with process by serving its registered agent, James Brock, 709 South Railroad Boulevard, McComb, Mississippi 39648.

**JURISDICTION AND VENUE**

3.      This Court has federal question jurisdiction pursuant to the Age Discrimination in Employment Act of 1967.

4.      This Court has subject matter jurisdiction, and venue is proper in this Court.

5.      Plaintiff filed a Charge of Discrimination with the EEOC on January 13, 2025, a true and correct copy of which is attached as Exhibit "A."  The EEOC issued a Notice of

Right to Sue on September 5, 2025, a true and correct copy of which is attached as Exhibit "B." Plaintiff timely files this action within ninety (90) days of receipt of his Notice of Right to Sue.

## STATEMENT OF FACTS

6. Plaintiff is a 47-year-old male resident of Lincoln County, Mississippi.

7. Plaintiff was hired on May 14, 2024, as a Welder/Laborer at Pike Construction of Mississippi, Inc. (PCM).

8. Plaintiff was the only certified welder working at PCM.

9. When Plaintiff was hired, he was paid $20 per hour.

10. Shortly after he was hired, Plaintiff learned that Laborer Bishop Killingsworth (male in mid 20s), who was hired a week or two before Plaintiff was, was paid $25.50 per hour.

11. During or around July 2024, Plaintiff complained to Superintendent Jimmy Whitley that he (Plaintiff) was being discriminated against due to his age.

12. Around a day or two later, Plaintiff complained to Project Manager Hugh Mathis.

13. Both Mr. Whitley and Mr. Mathis told Plaintiff that he would need to address the matter directly to Owner James Brock.

14. During July 2024, Plaintiff complained to Mr. Brock that he was being paid less than Mr. Killingsworth, i.e., a substantially younger and less experienced employee.

15. Mr. Brock responded that they would evaluate Plaintiff's experience and his performance.

16. After that, however, Mr. Brock never further addressed the matter.

17. On October 3, 2024, Plaintiff texted Mr. Whitley and wrote, "Not right a 20 yr

2

old makes more than me…A 5 dollar or more difference REALLY…My main thing is [Mr. Brock] knows what them young boys make and what I make I can weld they can't I can run equipment They can't Not to mention that I've have worked longer than they have lived…"

18.     On or around October 8, 2024, after Plaintiff had repeatedly complained of age discrimination to Mr. Whitley, Mr. Mathis, and Mr. Brock, without any substantial response or effort to address the situation, Plaintiff contacted Mr. Brock at home to address the matter.

19.     Mr. Brock then informed Plaintiff that he was terminated for contacting him at home.

20.     Plaintiff concedes that he contacted Mr. Brock at home but contends that this was after many previous complaints made following the proper chain of command which were ignored.

21.     Plaintiff contends the real reason he was terminated was that he was retaliated against for making a legally protected complaint of age discrimination.

22.     On January 13, 2025, Plaintiff filed an EEOC Charge of age discrimination and retaliation against PCM.

23.     On April 3, 2025, in response to Plaintiff's Charge, PCM submitted a Position Statement to the EEOC.

24.     PCM's Position Statement alleges that, "Pike Construction denies it subjected Claimant to discrimination in any way, shape, form, or fashion. To the contrary, Plaintiff was an uncertified at-will employee who violated Company rules and not only demonstrated a lack of skill for his job, but also an unacceptable lack of professionalism. In addition, Claimant not only threatened physical harm to another employee on a text

3

string but, while under the influence, called Mr. Mathis and his wife Mandy, stating he was going to kill or assault fellow employee Greg McCaffery. Claimant then called Mr. Brock and relayed the same message."

25.  Plaintiff contends this allegation is false.

26.  Plaintiff adamantly maintains that he was retaliated against and terminated after he repeatedly made complaints of age discrimination.

27.  Regarding the allegation about Plaintiff's status as a certified welder, Plaintiff maintains he texted Mr. Brock a picture of his welding certification and Mr. Brock acknowledged it.

28.  Regarding the allegation that Plaintiff "demonstrated a lack of skill for his job", Plaintiff contends this is false and baseless.

29.  At no point was he disciplined in any way for this nor was this allegation ever even made prior to the statement in the position statement.

30.  Regarding Plaintiff's professionalism, Plaintiff contends he consistently performed his job in a professional manner.

31.  Plaintiff followed the appropriate chain of command.

32.  Only after his multiple complaints of age discrimination were ignored was he left with no choice but to contact Mr. Brock directly.

33.  PCM's reference to the text string and phone call in question is misleading and falsely characterizes what occurred.

34.  First, Plaintiff adamantly denies that he was "under the influence" during his involvement with the text string or the phone call.

35.  This allegation is baseless and disingenuous.

36.  Secondly, the text string in question gives no serious reference to killing or

4

assaulting anyone.

37.     There is a lot of bluster, profanity, silly memes, and machismo, such as one might expect among hard working men in Pike County; but, it has more the tenor of boastful male jousting than anything serious.

38.     In fact, Mr. McCaffery's last text states, "Sorry if I have offended anyone !!"

39.     In the phone call with Mr. Mathis that followed it, Plaintiff complained about Mr. McCaffery's antagonism.

40.     Plaintiff concedes that he told Mr. Mathis he would defend himself if Mr. McCaffery attempted to fight him, but he never threatened to kill or assault Mr. McCaffery or anyone else.

41.     Notably, although Mr. McCaffery texted Plaintiff using the same type of boastful and playfully aggressive manner, he remains employed by PCM.

42.     PCM's Position Statement alleges that, "Claimant was qualified as a laborer but no more qualified than Mr. Bishop. Claimant is correct that he was paid less $5.50 per hour less than Bishop but age was not a factor in the decision…
Here, the slight disparity in pay between Mr. Bishop and Claimant is in no way, shape, form, or fashion, based on the age of either. Pike Construction hired Mr. Bishop at the rate of $25.00 per hour because of his commercial construction and crew-supervision experience. On the other hand, Pike Construction hired Claimant along with five other employees of Hugh Mathis Construction—a local residential construction company—when Pike Construction hired Mr. Mathis as a Project Manager. In other words, Pike Construction brought on Mr. Mathis and part of his former construction crew."

43.     Plaintiff contends this allegation is false and misleading.

44.     Plaintiff does not deny that he was brought on as part of Mr. Mathis's former

5

construction crew, but this is beside the point.

45. Plaintiff was hired by PCM, and he was a certified welder, which he communicated to Mr. Brock.

46. Moreover, he has many more years of experience in construction than Mr. Killingsworth has.

47. Plaintiff adamantly denies the allegation that Mr. Killingsworth was more qualified than Plaintiff was.

48. PCM's Position Statement alleges that, "Significantly, Claimant originally made $16.00 per hour for Mathis Construction, but prior to hiring on with Pike Construction, Mr. Mathis gave Claimant a $2.00 per hour raise, making his wage $18.00 per hour. When Pike Construction brought Mr. Mathis' crew on as employees, the Company gave each employee a $2.00 per hour raise, meaning the Company hired Claimant in at $20.00 per hour. The pay discrepancy was based on background and experience. Bishop Killingsworth was hired with a commercial construction background and superintendent experience. Claimant was hired with a residential construction background. Employees who have experience working commercial construction are regularly paid more because of that experience, and that is what happened here. Plaintiff's age was not a factor in his pay."

49. Plaintiff contends this allegation is false.

50. Plaintiff contends he had superior experience and credentials (e.g., certified welder) in comparison to Mr. Killingsworth.

51. Plaintiff disputes the validity of the alleged disparity between commercial and residential construction put forth by PCM.

52. Moreover, he strongly suspects the claim that Mr. Killingsworth had project

manager/superintendent experience is false.

53.     In short, Plaintiff contends he had substantially more experience and qualifications than Mr. Killingsworth.

54.     PCM's Position Statement alleges that, "Claimant's discharge was the result of his threatening to assault and kill a fellow employee as well as his drunkenly calling supervisory officials to make that threat."

55.     As explained above, Plaintiff was neither drunk nor did he threaten to assault or kill anyone.

56.     As any self-respecting man would, he asserted that he would defend himself if Mr. McCaffery attempted to fight him.

57.     It is significant to note, however, that the whole topic of the text string and phone call with Mr. Mathis are a pretext.

58.     On October 8, 2024, when Mr. phoned Mr. Brock at home, Mr. Brock openly stated that Plaintiff was terminated because he had called him at home.

59.     Mr. Brock made that clear, and he said nothing whatsoever about the text thread or phone call with Mr. Mathis.

60.     PCM's Position Statement alleges that, "Claimant was not hired as a welder; rather, he was hired as a laborer and is not a certified welder. More specifically, Claimant was hired from a local residential construction company owned by Hugh Mathis. Mr. Mathis was hired as a Project Manager for Pike Construction and was allowed to bring his crew (including Claimant) to Pike Construction. Pike Construction admits Plaintiff was paid $20.00 per hour for Pike Construction. As noted above, Claimant was employed as part of the Company hiring Hugh Mathis. While working for Mr. Mathis, Claimant was paid $16.00 per hour but prior to coming on board with Pike Construction, Mathis gave him a raise to

$18.00 per hour. When Pike Construction brought Mr. Mathis' crew on as employees each was given a two (2) dollar raise. This meant Claimant was paid $20.00 per hour."

61. Plaintiff contends this allegation is at least partially false and it is problematic in its characterization of the events that occurred.

62. Plaintiff is a certified welder, and he informed Mr. Brock about that by texting him a picture of his welding certification.

63. Mr. Brock responded by acknowledging this text.

64. While it is true Plaintiff was hired as part of Mr. Mathis's former crew, he was eventually hired as an employee of PCM.

65. What he was paid prior to working at PCM is beside the point.

66. As an employee of PCM, it was reasonable for him to expect to be paid commensurately with his level of experience and not to be discriminated against due to his age.

67. PCM's Position Statement alleges that, "Bishop Killingsworth was hired at a rate of $25.00 per hour based on his background and experience. Mr. Killingsworth was hired with a commercial construction background and project manager experience. Claimant was hired with a residential construction background. Employees who have experience working commercial construction are regularly paid more because of that experience."

68. Plaintiff contends this allegation is false.

69. Plaintiff contends he had superior experience and credentials (e.g., certified welder) in comparison to Mr. Killingsworth.

70. Plaintiff disputes the validity of the alleged disparity between commercial and residential construction put forth by PCM.

8

71.    Moreover, he strongly suspects the claim that Mr. Killingsworth had project manager/superintendent experience is false.

72.    In short, Plaintiff contends he had substantially more experience and qualifications than Mr. Killingsworth.

73.    PCM's Position Statement alleges that, "Claimant was discharged for drunkenly calling his Mr. Brock, Mr. Mathis and Mr. Mathis' wife threatening to assault and/or kill a co-employee. In the calls in question, Claimant did not even mention Mr. Bishop, his age or any pay disparity. Claimant simply made threats against a fellow employee. Furthermore, had Claimant discussed his pay, he would have been in contravention to Company rule which requires compensation conversations to occur with your direct supervisor NOT the owner. Employees are repeatedly advised of this rule and Claimant blatantly disregarded that rule by making a drunken phone call. Nevertheless, his termination was not based on his calling Brock. His termination was based on his drunkenly calling Brock and others and threatening to assault/kill a co-worker."

74.    Plaintiff contends this allegation is false and misleading.

75.    As noted repeatedly above, Plaintiff denies that he was drunk when he called Mr. Mathis or Mr. Brock.

76.    This allegation is baseless and disingenuous.

77.    Also as explained above, in his call to Mr. Mathis, Plaintiff did not threaten to assault or kill Mr. McCaffery.

78.    Rather, he asserted that he would defend himself if Mr. McCaffery attempted to fight him.

79.    Regarding the issue of Plaintiff's complaint about his pay, Plaintiff adamantly contends he acted in compliance with company's policy.

9

80.    During or around July 2024, Plaintiff complained to Superintendent Jimmy Whitley that he (Plaintiff) was being discriminated against due to his age.

81.    Around a day or two later, Plaintiff complained to Project Manager Hugh Mathis.

82.    Both Mr. Whitley and Mr. Mathis told Plaintiff that he would need to address the matter directly to Owner James Brock.

83.    Having thus been directed, Plaintiff then complained to Mr. Brock that he was being paid less than Mr. Killingsworth, i.e., a substantially younger and less experienced employee.

84.    Mr. Brock responded that they would evaluate Plaintiff's experience and his performance.

85.    After that, however, Mr. Brock never further addressed the matter.

86.    On October 3, 2024, Plaintiff texted Mr. Whitley and wrote, "Not right a 20 yr old makes more than me…A 5 dollar or more difference REALLY…My main thing is [Mr. Brock] knows what them young boys make and what I make I can weld they can't I can run equipment They can't Not to mention that I've have worked longer than they have lived…"

87.    Finally, on or around October 8, 2024, after Plaintiff had repeatedly complained of age discrimination to Mr. Whitley, Mr. Mathis, and Mr. Brock, without any substantial response or effort to address the situation, Plaintiff contacted Mr. Brock at home to address the matter.

88.    Mr. Brock then informed Plaintiff that he was terminated for contacting him at home.

89.    Plaintiff concedes that he contacted Mr. Brock at home but contends that

this was after many previous complaints made following the proper chain of command, which were ignored.

90.    Plaintiff maintains he was retaliated against and terminated after making multiple complaints of age discrimination.

## CAUSES OF ACTION

## COUNT I: VIOLATION OF THE ADEA – AGE DISCRIMINATION

91.    Plaintiff re-alleges and incorporates all averments set forth in paragraphs 1 through 90 above as if fully incorporated herein.

92.    Defendant has discriminated against Plaintiff because of his age based on the facts identified above which constitute a violation of the ADEA.

93.    Plaintiff has suffered lost wages and benefits as a result of Defendant's discriminatory acts.

94.    The unlawful actions of Defendant complained of above were willful and taken in reckless disregard of the statutory rights of Plaintiff.

## COUNT II: VIOLATION OF THE ADEA – RETALIATION

95.    Plaintiff re-alleges and incorporates all averments set forth in paragraphs 1 through 94 above as if fully incorporated herein.

96.    It is unlawful for any employer to discharge or discriminate against any individual for opposing any practice made unlawful by the ADEA.

97.    As a result of Defendant's retaliatory acts described above, Plaintiff has suffered and continues to suffer significant lost pay and benefits.

98.    The willful conduct of Defendant is evidenced by a consciously indifferent attitude towards employee's rights under the ADEA and its subsequent retaliation against Plaintiff.  As a result of this conduct, liquidated damages should be assessed against

11

Defendant.

99.    Plaintiff also seeks all other relief, at law or in equity, to which he may show himself justly entitled.

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff respectfully prays that the Court cause service to issue in this cause upon the Defendant and that this matter be set for trial.  Upon trial by jury thereon, Plaintiff prays that the following relief be granted:

1.  Back wages;
2.  Reinstatement or future pay in lieu of reinstatement;
3.  Liquidated damages;
4.  Attorney's fees;
5.  Lost benefits;
6.  Pre-judgement and post-judgment interest;
7.  Costs and expenses; and
8.  Such further relief as is deemed just and proper.

THIS the 30th day of November 2025.

Respectfully submitted,

Brad Furr, Plaintiff

By:/s Louis H. Watson, Jr.
LOUIS H. WATSON, JR. (MB# 9053)
JANE A. WATSON (MB#106877)
Attorneys for Plaintiff

OF COUNSEL:

Louis H. Watson, Jr., Esq.
Jane A. Watson, Esq.
THE WATSON LAW FIRM, PLLC
1501 JACKSON AVE W STE 113 PMB 101
OXFORD MS 38655-2566
Telephone: (601) 968-0000
Facsimile: (601) 968-0010
louis@watsonnorris.com
jane@watsonnorris.com